**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| MACK INDUSTRIES, LTD., et al., Debtors. | Case No. 17 B 09308 (Jointly Administered) |
| | The Honorable Carol A. Doyle |
| RONALD R. PETERSON, AS CHAPTER 7 TRUSTEE FOR MACK INDUSTRIES, LTD., Plaintiff, | Adversary Proceeding No. 19-00436 |
| v. | **Hearing Date: May 21, 2020**<br>**Hearing Time: 10:45 A.M.**<br>**via telephone using**<br>**www.Court-Solutions.com** |
| FERGUSON ENTERPRISES INC. D/B/A FERGUSON HEATING & COOLING, Defendant. | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on Thursday, May 21, 2020, at 10:45 a.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Carol A. Doyle, or such other judge as may be sitting in her place or stead, at the Dirksen Federal Building, Courtroom 742, 219 South Dearborn Street, Chicago, Illinois, and shall present the attached **Motion to Dismiss Amended Complaint**, at which time and place you may appear if you see fit. A copy of the motion is attached hereto and is herewith served upon you.

**Pursuant to Amended General Order No. 20-03, any party who objects to this motion and wants it called must file a Notice of Objection no later than two (2) business days before the presentment date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the Court may grant the motion without a hearing before the date of presentment.**

Dated: April 22, 2020

Respectfully submitted,

**FERGUSON ENTERPRISES, LLC F/K/A FERGUSON ENTERPRISES, INC. D/B/A FERGUSON HEATING & COOLING**

By: /s/ Reed Heiligman
(One of its Attorneys)

Reed Heiligman (No. 6294312)
HILTZ ZANZIG & HEILIGMAN LLC
53 West Jackson Blvd., Suite 701
Chicago, Illinois 60604
Telephone: 312.566.9008
reed@hzhlaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| MACK INDUSTRIES, LTD., et al., | ) | Case No. 17 B 09308 (Jointly Administered) |
| Debtors. | ) | The Honorable Carol A. Doyle |
| RONALD R. PETERSON, AS CHAPTER 7 TRUSTEE FOR MACK INDUSTRIES, LTD., | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 19-00436 |
| v. | ) | |
| FERGUSON ENTERPRISES INC. D/B/A FERGUSON HEATING & COOLING, | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Ferguson Enterprises, LLC f/k/a Ferguson Enterprises, Inc. d/b/a Ferguson Heating & Cooling ("Ferguson"), by and through its attorneys, Hiltz Zanzig & Heiligman LLC, hereby moves pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and Federal Rule of Bankruptcy Procedure ("FRBP") 7012(b) to dismiss the Amended Complaint [Dkt. # 24] in its entirety. In support of its motion, Ferguson states as follows:

**INTRODUCTION**

1. Ferguson is a supplier of commercial construction goods, including plumbing and related supplies. From time to time, in arms-length sales, Ferguson sold such goods to Debtor Mack Industries, Ltd. ("Debtor" or "Mack Industries"). The Trustee now seeks to avoid such routine sales and recover the purchase price that Debtor paid alleging that at some point (the Trustee fails to say when), such supplies were somehow (the Trustee does not say how) "ultimately" used to improve real estate that Debtor did not own. As such, according to the

Trustee, Debtor did not receive any "ultimate" benefit from its purchase rendering such purchases both actually and constructively fraudulent. To be certain, the Trustee makes no allegation that the purchase and sale of goods by Debtor and Ferguson were anything but an arms-length sale at a fair price.

2. Even assuming the truth of the Trustee's allegations, the Trustee fails to state a claim for either actual or constructive fraud. First, the Trustee acknowledges that the Debtor is the party that incurred the obligation to Ferguson by purchasing the goods and also the party that paid Ferguson for the goods. Consequently, the Trustee fails to allege that the Debtor received anything less than reasonably equivalent value in exchange for its payments to Ferguson. What consideration the Debtor subsequently received on account of such goods – what the Trustee calls the "ultimate benefit" – is irrelevant to determining whether the *quid pro quo* between Debtor and Ferguson constituted an exchange of reasonably equivalent value. To over-extend constructive fraud so as to make vendors liable for the ultimate economic value a debtor derived from goods it purchased would make vendors *de facto* insurers against corporate malfeasance and negligence. Nothing in the Bankruptcy Code or state law demands such an absurd result.

3. Even more fundamentally, the Trustee fails to allege any of the circumstances whereby goods that Debtor purchased from Ferguson were used to improve any real estate even though such use is the very means by which the Trustee asserts creditors were defrauded. The Trustee's implicit assumption seems to be that only the owner of the real estate where such goods are "ultimately" used derives any benefit from such goods. To the contrary, as the Trustee himself alleges, among other lines of business, the Debtor managed and maintained properties for other owners. In the course of doing so, Debtor may routinely have used goods it purchased to improve real estate owned by others while still being compensated as manager. But, because

the Trustee alleges nothing about the circumstances at the core of his fraud claim, *i.e.* how the goods Debtor purchased from Ferguson were ultimately used, whether Debtor derived any "ultimate benefit" – to the extent that is even relevant – is a matter of sheer speculation. The Trustee's bald assertion that Debtor dissipated such assets is thus wholly conclusory and insufficient to state claim for either constructive or actual fraud. The Court should accordingly dismiss the Amended Complaint in its entirety.

**BACKGROUND**

4. Ferguson is a supplier of commercial and residential plumbing supplies, PVF (pipe, valves, and fittings), waterworks, and HVAC products, among other things. (*See* Am. Compl. ¶ 13.) Ferguson has over 1,400 locations serving customers in all 50 states, the Caribbean, Puerto Rico, and Mexico.

5. Debtor engaged in several lines of business, including wholesale real estate investing, management, and development. (Am. Compl. ¶¶ 8, 12.) Debtor was owned by James K. McClelland. (*Id.* ¶ 6.)

6. Between November 12, 2012, and February 27, 2017, the Debtor purchased plumbing and related supplies from Ferguson. In Exhibit B of the Complaint, the Trustee purports to list thousands of sales between Debtor and Ferguson – many for amounts less than $100 – identified only by what appears to be an invoice number. (Am. Compl. ¶ 69 & Ex. B.) The Trustee alleges that Debtor paid Ferguson for the goods that it purchased with checks drawn upon its bank accounts as listed in Exhibit A of the Amended Complaint. The Trustee says such payments totaled $2,101,739.88.

7. The Trustee asserts that the goods Debtor purchased from Ferguson were used to improve the corresponding real estate listed in Exhibit B. The Trustee offers no allegations as to

the circumstances under which such goods came to be used at such properties, including (i) who used such goods; (ii) for what purpose; (iii) when such goods were used; (iv) any agreements relating to the terms on which they were used; or (v) what if any direct or indirect consideration the Debtor may have received for the use of its goods.

8. In Exhibit B of the Amended Complaint, the Trustee also identifies the owner of the corresponding real estate as of the invoice date (though the relevance the Trustee attaches to that date is unclear). The Trustee calculates 91.68% of the payments from Debtor to Ferguson, *i.e.* $1,932,222.48, were for goods that were "ultimately" used at properties owned by someone other than the Debtor. Trustee ascribes many of the purchases to "inventory" but fails to explain to what that refers or how the Trustee accounts for it in their alleged fraudulent scheme.

9. Among such real estate owners purportedly benefiting from use of Debtor's goods, the Trustee identifies several entities that were in turn owned by Debtor itself, including Mack Industries II LLC, Mack Industries III LLC, Mack Industries IV LLC, Mack Industries V LLC, and Mack Industries VI LLC. (*See* Am. Compl. ¶ 44.) The Trustee further explains that two of those Debtor-owned entities, Mack Industries II LLC and Mack Industries III LLC beneficially owned the Chicago Title Land Trust dated March 14, 2013, and the Chicago Title Land Trust dated April 9, 2013, which in turn owned still more of the properties that the Trustee says "ultimately" benefited from Debtor's goods. (*See* Am. Compl. ¶¶ 44, 71 & 72.)

10. Finally, one of the other real estate owners whom the Trustee says ultimately benefited from Debtor's fraudulent scheme to dissipate its assets was American Residential Leasing Co. LLC ("American Residential") – the very creditor Debtor was supposedly seeking to defraud. As one of its business lines, Debtor entered into a 2012 Master Lease Agreement with American Residential pursuant to which Debtor managed several hundred residential properties

owned by American Residential, including leasing and maintaining the properties, and paying all property taxes levied on such properties. (Am. Compl. ¶¶ 16-25.)

11. In the summer of 2014, the Debtor sought to renegotiate the financial terms of its agreement with American Residential claiming that it could not profitably perform under the then-existing terms. In the heat of such negotiations, the Trustee alleges that Debtor's vice-president of sales and marketing threatened that without a modification, the Debtor would transfer all of its assets to related entities for nothing in return so as to hinder American Residential's ability to exercise its legal remedies as a creditor. (Am. Compl. ¶ 30.) The Trustee offers no allegation that the vice president of sales had the authority to dissipate the Debtor's assets or even make such a threat. Despite characterizing Debtor's relationship with American Residential as deteriorating during the negotiations, the Trustee cites no other such statement made or adopted by any of Debtor's senior executives or managers. (*See* Am. Compl. ¶¶ 33 & 39.) For its part, while American Residential sent Debtor a default notice in December 2014, American Residential did not file suit against Debtor until more than a year later in March 2016, well after most of the transfers at issue. (*See* Am. Compl. ¶¶ 36 & 37.)

12. On March 24, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"). Shortly thereafter, on June 1, 2017, Debtor converted its case to one under chapter 7 of the Bankruptcy Code. Ronald R. Peterson (the "Trustee") is the duly appointed chapter 7 trustee for the Debtor's bankruptcy estate.

13. On March 22, 2019, together with well over 400 other similar adversary complaints, the Trustee filed a skeletal complaint here seeking to avoid Debtor's purchases from

Ferguson between November 2012 and early 2017, and recover of the purchase price that Debtor paid. After Ferguson moved to dismiss the original complaint, and in the wake of the Court's decision in *Peterson v. McLean*, No. 19-A-433, 2019 Bankr. LEXIS 3603 (Bankr. N.D. Ill., November 20, 2019), the Trustee consented to entry of an order dismissing the complaint without prejudice. (*See* Order [Dkt. #22].)

14. On February 28, 2020, the Trustee filed his Amended Complaint [Dkt. #24] against Ferguson asserting 3 counts for (i) constructive fraud in the amont of $1.9 million under both the Bankruptcy Code and under Illinois' Uniform Fraudulent Transfer Act (UFTA) (Count 1); (ii) actual fraud in the same amount again under both the Bankruptcy Code and the UFTA (Count 2); and (iii) $22,946.83 in alleged preferences. Ferguson now moves to dismiss the Amended Complaint in its entirety.

**ARGUMENT**

15. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain sufficient factual information to "'state a claim to relief that is plausible on its face.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must include in its complaint plausible factual allegations that establish the elements of the claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "*Twombly* and *Iqbal* teach that [ ] cut-and-paste jobs are not a substitute for real facts that plausibly 'show,' under Rule 8, that the

Plaintiff is entitled to relief." *Gardner v. Appleton Baseball Club, Inc.*, No. 09 C 705, 2010 U.S. Dist. LEXIS 31653, at *16 (E.D. Wis. Mar. 31, 2010).

16. Because the Trustee alleges fraud, his Complaint is subject to the heightened pleading requirements of Rule 9(b) (made applicable here by FRBP 7009). *See Automation Aids*, 896 F.3d at 839; *see also Gierum v. Glick (In re Glick)*, 568 B.R. 634, 657 (Bankr. N.D. Ill. 2017) (providing that Rule 9(b) applies to both actual and constructive fraud claims) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)). Thus, plaintiff must "state with particularity the circumstances constituting fraud or mistake." *Automation Aids, Inc.*, 896 F.3d at 839. Specifically, "[t]he plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of a newspaper story.'" *Id*.

17. As described below in greater detail, the Trustee fails to plead any of his claims to these standards instead basing entire elements of his claims on (dubious) conclusory assertions. The Court must therefore dismiss the Amended Complaint entirely.

## I. Failing to Allege That Debtor Received Anything Less Than Reasonably Equivalent Value, the Trustee Fails to State a Constructive Fraud Claim and the Court Should Accordingly Dismiss Count 1.

18. To state a constructive fraud claim under Section 548 or under Illinois state law, the Trustee must plead: "(1) a transfer of the debtor's property or interest; (2) made within two years before the date the bankruptcy petition was filed; (3) for which the debtor received less than a reasonably equivalent value in return; and (4) that the debtor (a) was insolvent on the date of the transfer or became insolvent as a result, (b) engaged in business or a transaction as a result of which the debtor's remaining capital was unreasonably small, or (c) intended to incur, or should have known he would incur, debts he would be unable to pay." *See Peterson v. McLean*, No. 19-A-433, 2019 Bankr. LEXIS 3603, at *10 (Bankr. N.D. Ill. Nov. 2019).

19. Here, the Trustee fails to allege Debtor received less than reasonably equivalent value in return. Under both the UFTA and Section 548, Courts determine "'reasonably equivalent value' in the context of fraudulent conveyance by determining the value of what was transferred and comparing it to what was received." *Creditor's Comm. Of Jumer's Castle Lodge, Inc. v. Jumer,* 472 F.3d 943, 947 (7th Cir. 2007) (citing *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997)). "Fraudulent conveyance law, under both state and federal statutes, is concerned with the reality of whether the transferee conferred equivalent value on the debtor in the transaction sought to be avoided." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000)

20. Instead of focusing on the legally relevant transaction between the Debtor and the Defendant, the Trustee looks to the "ultimate" economic benefit the Debtor purportedly derived from the goods that it purchased. In doing so, the Trustee is impermissibly attempting to allege lack of reasonably equivalent value by comparing parts of separate transactions: the Trustee is comparing the purchase price it paid Ferguson in one transaction with what it "ultimately" received in a later transfer where somehow – the Trustee fails to say how – the goods it purchased from Ferguson came to be used to improve someone else's real estate.

21. Rather, in alleging that the Debtor subsequently dissipated the valuable goods it bought from Ferguson, the Trustee acknowledges that Ferguson provided Debtor with reasonably equivalent value. Indeed, a sale of goods between two parties is the quintessential exchange of reasonably equivalent value.

22. In attempting to plead his "ultimate benefit" theory while ignoring the fact that the (relevant) transfers here were nothing more than routine purchase of goods by Debtor, the Trustee offers allegations that border on the nonsensical. For example, the Trustee alleges:

"[T]he bills, charges, and payments at issue in this complaint were for parcels of real estate that the Debtor did not own." (Am. Compl. ¶ 77.) None of the bills or charges at issue were "for" any real estate. The Debtor purchased plumbing and other supplies from Ferguson and the bills and charges were "for" those goods. What circumstances or subsequent transactions led to the use of Debtor's newly purchased goods in any particular real estate project, the Trustee never alleges nor is it relevant to evaluating the *quid pro quo* exchange between Ferguson and Debtor.

23. The Trustee inaccurately alleges that "Ferguson improved" certain real estate owned by various non-debtors. (*See* Am. Comp. ¶ 78.) But, the Trustee offers no plausible basis to find that Ferguson did anything to improve any real estate. Instead, as the Trustee acknowledges, Ferguson is a distributor of plumbing and related goods that sold such goods to the Debtor. How, when and who subsequently used the goods Debtor purchased from Ferguson to improve any real estate the Trustee fails to say (nor would it be relevant to any constructive fraud claim against Ferguson).

24. To be certain, the Trustee admits, as he must, that the Debtor is the entity that incurred the obligation, *i.e.* purchased the goods, and that the Debtor in turn paid such obligation from its accounts. (*See* Am. Compl. ¶¶ 80 & 81 (alleging that Debtor both incurred the obligation and paid the corresponding bill)). Accordingly, Debtor became the owner of the goods that it purchased, and it alone was responsible for how such goods were "ultimately" used. If someone subsequently stole the goods, the Trustee can hardly declare fraud and require Debtor's vendors to return the purchase price because the Debtor never received any "ultimate benefit." Likewise, if its management squandered Debtor's property, looted corporate assets, or otherwise misappropriated Debtor's property without receiving value in return while Debtor's creditors went unpaid, the Trustee may have claims arising from those transfers, including a

constructive fraud claim against whomever received the Debtor's interest in such goods without giving value.[1] Permitting the Trustee to assert a constructive fraud claim against the vendor who sold the Debtor the goods because the Debtor did not realize the "ultimate" economic benefit from the goods it bought would make vendors the Debtor's *de facto* insurers.

25. As the Trustee fails to allege a basis for finding that Debtor did not receive reasonably equivalent value for the purchase price it paid Ferguson, the Trustee fails to state a legally cognizable claim for constructive fraud and the Court should dismiss Count 1 of the Amended Complaint with prejudice.

## II. The Court Should Dismiss Count 2 of the Amended Complaint Because the Trustee Fails to Plead Actual Fraud With the Requisite Particularity.

26. In Count 2, the Trustee purports to assert claims for actual fraud seeking to avoid and recover the purchase price Debtor paid to Ferguson for thousands of plumbing and related goods. To be certain, the Trustee makes no allegation that Ferguson was anything but a vendor who sold plumbing and related goods to Debtor in an arms-length sale. Instead, the crux of the Trustee's actual fraud claim is that someone, somehow came to use the goods that Debtor purchased from Ferguson to improve real estate that Debtor did not own. Because the Trustee offers no allegations as to the circumstances of that fraud, the Trustee fails to state any plausible basis (much less with the requisite particularity) for deeming the Debtor's purchases from Ferguson to be part of a fraudulent scheme to dissipate its assets (if they even were dissipated).

27. To avoid a transfer for actual fraud under either the Bankruptcy Code or the UFTA as adopted by Illinois, a party must prove that the debtor transferred its interest in property with actual intent to hinder, delay, or defraud a creditor. *In re Geltzer*, 502 B.R. 760,

[1] Because the Trustee alleges nothing about the circumstances in which Debtor's goods came to be used in any real estate, including what consideration the Debtor may have received, whether the Trustee actually has such a claim is just a guess.

766 (Bankr. S.D.N.Y. 2013); *Brandt v. KLC Financial, Inc (In re Equipment Acquisition Resources, Inc.),* 481 B.R. 422, 427 (Bankr. N.D. Ill. 2012); 11 U.S.C. § 548(a)(1)(A). While actual intent can be proved by circumstantial evidence, often referred to as badges of fraud, a single badge of fraud is insufficient to establish such intent. *Equipment Acquisition Resources,* 481 B.R. at 431. Moreover, a plaintiff alleging actual fraud must satisfy the heightened pleading standards of Rule 9(b). *Id.* at 430-31. Thus, when alleging actual fraud, a plaintiff must state particular circumstances constituting the alleged fraud, meaning the who, what, when, where and how of the fraudulent scheme. *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996).

28. Here, the Trustee suggests that the Debtor dissipated its assets so as to reduce the assets available for American Residential to collect against. (*See* Am. Compl. ¶ 96.) With respect to Ferguson, the Trustee seeks to avoid payments that Debtor made to Ferguson constituting the purchase price for plumbing and related goods that the Trustee says were subsequently used to improve someone else's properties. Such routine purchase of goods alone – especially made over a period of years – did nothing to hinder, delay or defraud American Residential (or any other creditor). To the contrary, Debtor's creditors remained free to collect any debts they were owed against Debtor's assets that naturally included the actual goods Debtor purchased from Ferguson.[2]

29. Instead, the Trustee asserts the post-purchase use of the Debtor's goods benefitted someone else. Yet, notwithstanding the central role such post-purchase transfers play in the Trustee's claims, the Trustee fails to plead anything regarding the circumstances in which the

[2] The Trustee all but acknowledges that Ferguson has a complete defense to any actual fraud claim in that it gave value in the form of actual goods without knowledge of whatever fraud the Trustee suggests Debtor's owners may have perpetrated. 11 U.S.C. § 548(c). As such, it is difficult to perceive what outcome the Trustee hopes to achieve through pursuit of its fraud claims other than to extort a cost of defense settlement from Ferguson.

Debtor's goods were "ultimately" used. Absent such allegations, no one can discern from the Amended Complaint how, when, why, or who caused the Debtor's supplies to be used in any particular real estate, including what direct or indirect benefit the Debtor did or did not receive.

30. Implicitly, the Trustee seems to assume that because the Debtor's goods were used to improve someone else's property that Debtor received no consideration in return. In fact, the Trustee's own allegations demonstrate that such assumption is baseless. The Trustee alleges that the Debtor was involved in many lines of businesses, including managing and maintaining properties, including hundreds of properties for American Residential. In the course of such work for which Debtor was compensated, Debtor undoubtedly used plumbing supplies to improve the owner's real estate. Indeed, the Trustee lists American Residential as one of the owners that "ultimately" benefited from the use of Debtor's goods. (*See* Am. Compl. Ex. B.) The mere fact that the goods were used on someone else's properties hardly establishes that such goods were transferred away for no value much less with actual intent to defraud creditors.

31. Indeed, the Trustee attempts to artfully plead his claim without saying anything about the circumstances in which someone, at some point, ultimately used the Debtor's supplies. The Trustee alleges: "Each obligation incurred and transfer to Ferguson improved real estate owned by other entities[.]" (Am. Compl. ¶ 99.) To the contrary, the obligations that Debtor incurred and transfers to Ferguson were by the Trustee's own admission for the purchase of supplies – not improvements to real estate. How such supplies came to be used to improve any real estate and by whom the Trustee does not say. Likewise, the Trustee's assertion that "[e]ach obligation incurred and payment to Ferguson reduced the Debtor's assets, leaving less for American Residential to collect" is conclusory and wrong. (Am. Compl. ¶ 99.) Debtor paid Ferguson in exchange for goods that became Debtor's property and part of the assets against

which creditors were free to execute against. Whether any subsequent use of such goods hindered or defrauded creditors is matter of rank speculation given the absence of allegations in the Amended Complaint.

32. Further, by the Trustee's own admission, a substantial portion of the properties where such goods were "ultimately" used are properties owned by entities and land trusts that the Trustee himself asserts are in turned owned by the Debtor, including Mack Industries II, III, IV, V and VI and the land trusts those entities own. (*See* Am. Compl. ¶ 44, 71, and 72.) Given the Trustee's implicit assumption that the ultimate benefit of goods inures to the owner of the real estate where they are used, such use only enhanced the Debtor's interest in those entities belying any inference of an actual intent to defraud creditors.

33. As its sole specific allegation of actual fraudulent intent, the Trustee offers his characterization of a June 2014 statement by the Debtor's vice-president of sales and marketing to a vice president of American Residential in which the Trustee says the Debtor's vice-president said that Debtor would transfer its assets to related entities for nothing in return to hinder American Residential's ability to exercise its rights as a creditor. (*See* Am. Compl. ¶ 30.) The Trustee offers no other statements by anyone else endorsing or repeating such purported threat. Instead, the balance of alleged statements that the Trustee cites are nothing more than Debtor's purported position that the economics of their then existing deal with American Residential was financially unsustainable for Debtor – a contention with which the Trustee offers no dispute. (*See id.* ¶¶ 27-33.) Indeed, American Residential – the very creditor that the Trustee alleges was the target of the supposed scheme to defraud – is one of the real estate owners the Trustee alleges benefited from the fraudulent scheme. Suffice it to say that it is a poor scheme to defraud creditors by transferring one's assets to them.

34. Because the Trustee fails to allege the particular circumstances of any plausible scheme to actually defraud creditors much less as to how Ferguson participated in such scheme, the Court must also dismiss Count 2 with prejudice.

**III. The Court Should Also Dismiss the Trustee's Preference Claim in Count 3.**

35. In order to state a preference, claim under Section 547, a plaintiff must allege more than a conclusory recitation of the statutory elements. *In re Tweeter Opco*, 452 B.R. 150, 151 (Bankr. D. Del. 2011); *In re Hydrogen*, *LLC*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010). To satisfy the pleading standards of Rule 8(a)(2), a plaintiff must, among other things, at least identify a specific antecedent debt owed by the debtor to the defendant at the time of the transfers. *Angell v. Ber Care, Inc. (In re Caramerica, Inc.*), 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009) (dismissing preference claims where plaintiff failed to allege facts regarding the antecedent debt). In doing so, the plaintiff must provide at least some information as to the party's agreements and the goods exchanged giving rise to the antecedent debt. *In re Quantum Foods*, *LLC*, 558 B.R. 111, 115 (Bankr. D. Del. 2016).

36. Here, while identifying two payments that the Debtor made to Ferguson during the 90-day preference period, the Trustee fails to identify any specific antecedent debt alleging merely that "Debtor made the transfers on account of invoices that Ferguson issued to the Debtor." (Am. Compl. ¶ 108.) Such generic allegation is tantamount to reciting the statutory requirement that the transfer was on account of an antecedent debt – substituting the word "invoice" for antecedent debt. In fact, such allegation falls short of the full statutory requirement that provides the transfer must be "on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Debtor fails to so much as identify the specific invoice much less allege any information as to party's agreements or even the goods that were the subject of such agreement.

37. Likewise, Debtor fails to allege any basis for finding that Ferguson was a creditor (another essential element of a preference claim). Instead, the Trustee conditionally asserts: "To the extent the Debtor was liable for the Ferguson invoices, Ferguson was a creditor of the Debtor and monies owed to it were an antecedent debt." (Am. Compl. ¶ 109.) Again, such allegation says nothing; it is tantamount to alleging that if Ferguson was a creditor then it was a creditor. Such empty allegations fail to afford Ferguson any meaningful notice of the nature of the claims against as required by Rule 8(a). The Court should accordingly dismiss Count 3 along with the rest of the Amended Complaint.

**WHEREFORE**, Defendant Ferguson Enterprises, LLC f/k/a Defendant Ferguson Enterprises, Inc. d/b/a Ferguson Heating & Cooling respectfully requests the entry of an order, pursuant to FRCP 12(b)(6) as made applicable here by FRBP 7012 dismissing the Complaint in its entirety with prejudice, and granting such other and further relief as this Court deems just.

Dated: April 22, 2020

Respectfully submitted,

**FERGUSON ENTERPRISES, LLC F/K/A FERGUSON ENTERPRISES, INC. D/B/A FERGUSON HEATING & COOLING**

By: *_/s/ Reed Heiligman_*
One of its attorneys

Blair R. Zanzig (No. 6273293)
Reed Heiligman (No. 6294312)
**HILTZ ZANZIG & HEILIGMAN LLC**
53 West Jackson Blvd., Suite 701
Chicago, Illinois 60604
Telephone: 312.566.9008
Fax: 312.253.4874
reed@hzhlaw.com
bzanzig@hzhlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Reed Heiligman, an attorney, hereby certify that, on April 22, 2020, I caused a true and correct copy of the foregoing **Notice of Motion** and **Motion to Dismiss Amended Complaint** to be served on the following via the indicated means:

VIA CM/ECF

Jeffrey K. Paulsen, jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com

/s/ Reed Heiligman