**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| MACK INDUSTRIES, LTD., et al., | ) Case No. 17 B 09308 |
| Debtors. | ) (Jointly Administered) |
| | ) The Honorable Carol A. Doyle |
| RONALD R. PETERSON, AS CHAPTER 7 TRUSTEE FOR MACK INDUSTRIES, LTD., | ) |
| Plaintiff, | ) Adversary Proceeding No. 19-00436 |
| v. | ) |
| FERGUSON ENTERPRISES INC. D/B/A FERGUSON HEATING & COOLING, | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Giving full credit to the Trustee's well-pled facts – though not his mere conclusory argument – the Trustee's own allegations in the Amended Complaint demonstrate that in purchasing goods from the Ferguson and paying its own resulting indebtedness, the Debtor received reasonably equivalent value in exchange. Consequently, the Trustee does not and cannot state a constructive fraud claim to avoid the Debtor's payments to Ferguson for the goods it bought. The Court thus must dismiss Count 1 of the Amended Complaint with prejudice.

In Response, the Trustee argues that the Debtor did not receive reasonably equivalent value because the Debtor's owners caused the goods that the Debtor purchased to be used to improve property owned by entities other than the Debtor – some of whom, but not all, were affiliates of the owners. The Trustee's argument fails to save his constructive fraud claim because the economic benefit that the Debtor subsequently derived (or did not derive) from the

goods it bought does not, as a matter of law, retroactively determine whether the Debtor received reasonably equivalent value at the time of its original purchase. Put another way, the Trustee's response obscures the fact that having purchased the goods itself the Debtor owned the goods and owed Ferguson the purchase price. The extent to which the goods came to be used to improve someone else's property is the subject of a subsequent transfer. In some instances, as apparently was the case with goods that eventually improved property owned by American Residential (which the Trustee concedes he is no longer pursuing), the Debtor transferred such goods according to the terms of an agreement with the owner. In other cases, the Trustee seems to suggest that Debtor gifted its goods to an affiliate (or the Debtor's owners stole the goods) and the Trustee is free to pursue constructive fraud claims to avoid those transfers. Constructive fraud, however, does not allow the Trustee to use that subsequent transfer to invalidate the Debtor's original purchase; there is no predecessor transferee liability.

The Trustee's real claim appears to be Count 2 of his Amended Complaint that the Debtor's purchases were made with the actual intent to defraud its creditors. While the Trustee tells a familiar story about owners turn fraudsters who drain a debtor's assets to shelter them from its creditors, the Trustee's allegations do not match his story and does not, as the Trustee argues in his Response, establish any plausible basis to find the Debtor's purchase of goods from Ferguson were actually fraudulent. The Trustee's story goes that the Debtor purchased goods for the benefit of its affiliates as part of a scheme to put its assets beyond the reach of American Residential. The Trustee seeks to avoid the Debtor's payment for purchases of goods going back to November 2012. At the same time, the Trustee alleges that from December 2012 to January 2014, the Debtor had just entered an agreement with American Residential to manage its properties, expanding their deal more than 20 times during that period. It is implausible to infer

2

that, having entered into what the Debtor presumably anticipated would be a money-making venture, the Debtor was also simultaneously dissipating its assets to defraud its new customer, American Residential.

Likewise, the Trustee points to an alleged June 2014 threat by Debtor's vice president of sales that unless American Residential made concessions to Debtor, the Debtor would dissipate its assets. Again, the Trustee points to no change in the Debtor's purchasing practices with respect to Ferguson coinciding with Debtor's alleged threat and thus there is nothing to suggest the Debtor carried it out. To the contrary, as the Trustee alleges, Debtor had always purchased goods from Ferguson some of which were ultimately used to improve real estate owned by someone else. As an additional badge of fraud, the Trustee says the Debtor revealed its true fraudulent intent by concealing the transfers at issue, *i.e.* its purchases from Ferguson. In reality, the Trustee alleges that Debtor was only required to report to American Residential the *gross* rental income that it collected from the properties it was managing that in turn determined the rent it owed to American Residential. Nowhere does the Trustee offer any well-pled allegation that Debtor had any obligation to report its purchasing history to American Residential (or anyone else). In fact, the Debtor's purchases from Ferguson were openly documented – the Trustee even attaches an invoice to his response.

Far from plausibly alleging an actual intent to defraud or "badges of fraud" that would give rise to such an inference, the Trustee's allegations tell a story of routine and consistent purchasing practices by the Debtor as a general contractor or property manager for a variety of real estate owners. As such, the Trustee fails to state a claim that Debtor's purchases from Ferguson were part of any actual fraud and the Court must dismiss Count 2.

**ARGUMENT**

I.   **The Trustee Fails to Allege Debtor Received Less Than Reasonably Equivalent Value and Thus Fails to State a Constructive Fraud Claim.**

Admitting that the Debtor both incurred its obligations to Ferguson and paid the resulting bills and charges, the Trustee fails to allege that the Debtor received anything less than reasonably equivalent value in the exchange – an essential element of constructive fraud claims under both Section 548 and Illinois' UFTA.  The Court must therefore dismiss the Trustee's constructive fraud claim.

The Trustee attempts to brush off his omission by claiming that Ferguson is changing the Trustee's allegations, insisting that the Court must accept the Trustee's allegation that the Debtor "paid Ferguson for goods to improve others' real estate." (*See, e.g.,* Resp. at 11.)  But this purported distinction conflates the value of the goods that the Debtor purchased with how the Debtor ultimately used such goods.  In evaluating a transfer for constructive fraud, Courts compare the value of what was transferred to what was received.  *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F3d 943, 947 (7th Cir. 2007); *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997).  Ferguson is not altering or ignoring the Trustee's allegations, but rather, the Trustee's allegation as to what happened to the Debtor's goods after it purchased them is irrelevant to determining the value of the original exchange for constructive fraud purposes.  To the extent the Trustee means to suggest that the Debtor did not receive anything in exchange because Debtor purchased the goods with the fraudulent purpose of transferring them beyond the reach of creditors, the Trustee is attempting to bootstrap its actual fraud claim in Count 2 to state what would be an entirely redundant constructive fraud claim.  As described below (*see supra* § II), the Trustee has not and cannot allege a plausible basis for inferring that Debtor's purchases from Ferguson were part of any fraudulent scheme, but that of course has no

bearing on his constructive fraud claim.  Constructive fraud relieves the Trustee of demonstrating fraudulent intent, but only in limited circumstances where the Debtor was insolvent and did not receive reasonably equivalent value.

Looking to the relevant comparison, the Trustee plainly alleges, as he must, that the Debtor itself incurred the obligation to Ferguson from purchasing various goods.  (*See* Am. Compl. ¶¶ 80 & 81 (alleging that Debtor both incurred the obligation and paid the charges); *see also* Resp. at Ex. A (Ferguson invoice expressly providing that goods were "sold to" the Debtor Mack Industries Ltd.).)  As the entity that incurred the obligation – *i.e.,* the entity to whom the goods were sold – Debtor became the owner of the goods with the authority to direct their use as it pleased.  Further, having incurred such obligations, the Trustee alleges that the Debtor paid Ferguson to satisfy its own resulting indebtedness, which by definition also constitutes reasonably equivalent value.  *See* 11 U.S.C. § 548(d)(2)(A) (defining "value" to include "property, or satisfaction … of a present or antecedent debt of the debtor"); 740 ILCS 160/4(a) ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied[.]"); *see B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 478 (7th Cir. 2005) (affirming dismissal of constructive fraud claim holding that "[r]epayment of an antecedent loan comes within the 'reasonably equivalent value' rule."); *Cox. v. NOSTAW, Inc.* (*In re Cent. Ill. Energy Coop.*)*,* 521 B.R. 868, 873 (Bankr. C.D. Ill. 2014) ("[A] debtor's transfer of funds in satisfaction of its own debt is not constructively fraudulent.") (collecting cases).)

The Trustee attempts to distinguish his allegations by clarifying that he is not alleging "that the Debtor bought goods, then held them, then later transferred them to the McClelland family entities." (Resp. at 11.)  Such distinction only highlights the deficiency of the Trustee's

5

claim as the time in which the Debtor subsequently holds the goods it bought from Ferguson has no bearing on the value of the goods at the time the Debtor bought the goods or the value of the indebtedness satisfied through the transfers at issue here. What the Debtor subsequently did with the goods is a separate and distinct transfer from its purchase from Ferguson – no matter how long or immediate the Debtor took to dispose of *its* newly purchased goods.

The Trustee attempts to analogize his factual allegations here to a situation in which a non-debtor principal uses a corporate credit card to pay his own personal obligations. (*See* Resp. at 11-12 (*citing Krudy v. Chase Bank USA, N.A. (In re Rainmaker Group, Inc.),* Adv. Pro. 12-50104, 2013 Bankr. LEXIS 1483, at *7, (Bankr. S.D. Ind. 2013).) Whatever the appropriate outcome in such a case, those circumstances are not analogous to the facts here. Here, the Debtor is the entity to whom Ferguson sold the goods and as such those goods belonged to the Debtor, and the Debtor was in turn liable for the resulting indebtedness. This is not a case where the Debtor is paying the obligations incurred by others as was the case in *Krudy* where the principals seem to have used corporate credit cards to pay their personal obligations. *See Krudy, 2013 Bankr. LEXIS 1483, at *6-*7.*

Though inapposite here, *Krudy* should generally be afforded very little persuasive value in any event. In that case, the Court acknowledged that the trustee pled very few details in alleging that the debtor's principals in that case used corporate debt to pay their personal obligations making it impossible to draw comparisons across different factual circumstances. *See Krudy*, 2013 Bankr. LEXIS 1483, at *2 ("The factual allegations of the Trustee's Complaint are few.").) Moreover, to the extent that *Krudy* is read to mean that repayment of an antecedent loan does not constitute reasonably equivalent value for constructive fraud purposes, it is contrary to the plain language of 11 U.S.C. 548(d)(2)(A), 740 ILCS 160/4(a), and the Seventh

6

Circuit's controlling decision in *B.E.L.T* that affirmed the dismissal of a constructive fraud claim on exactly those grounds. 403 F.3d at 478. Finally, rather than analyzing the statutory elements of a constructive fraud claim, the *Krudy* Court did not look to whether the credit card company gave "value" (*i.e.* a necessary element of a constructive fraud claim), and instead framed the issue as a matter of court's own policy judgement: "The issue is who is to be held liable as a result of the principals' bad acts in using the Debtor's money to pay for their personal debts," which is always true, but says nothing about whether the trustee stated the requisite elements of a constructive fraud claim. *Id.* at *7.

The Trustee also argues that he has adequately pled that the Debtor's payment for the goods it purchased was for less than reasonably equivalent value because, according to the Trustee, the Debtor did not own the real estate where the goods it purchased were – ultimately – used.[1] (*Resp.* at 8, 11-12.) But who owns the real estate where the Debtor's goods were used says nothing about the *quid pro quo* received when the Debtor purchased those goods from Ferguson. The Trustee's own complaint illustrates as much: the Trustee originally sought to avoid transfers that the Trustee alleged constituted payment for over 650 instances in which the Debtor bought goods that the Trustee alleges were used to improve land owned by American Residential. (*See* Resp. at 11 (explaining Trustee is no longer seeking to avoid transfers relating to 655 transactions allegedly related to American Residential property). Yet, despite not owning

---

[1] The Trustee quibbles with Ferguson's use of the phase "ultimate benefit," urging that the Trustee never alleged any delay between the purchase of the goods and their use to improve land. (Resp. at 8.) The Trustee misses the point; the issue is not temporal, but rather that the Trustee is collapsing what are different transfers. Having purchased the goods, the Debtor was the owner of such goods free to direct their use. That the owner of the land where the goods were eventually or ultimately used derived economic benefit from such goods says nothing about the value that Debtor received for transferring the goods to the property owner much less having any bearing on the value of the original exchange between Debtor and Ferguson.

7

the property, the Debtor managed the property for American Residential and presumably transferred such goods to American Residential pursuant the terms of whatever agreement Debtor had with American Residential.

The Trustee suggests that this merely reduces his damages claim, but he ignores the salient point: there is no reasonable inference to be made about the value the Debtor received in purchasing goods from Ferguson based on a mere allegation that goods purchased were used to improve someone else's real estate. How ownership of such goods was transferred from Debtor after buying them to the owner of the real estate is a separate transfer (or series of transfers). In the case of land owned by American Residential, Debtor transferred such goods to American Residential under the terms of its agreement. While the terms of such agreement inform the value the Debtor received from American Residential – it does not retroactively change the value Debtor received in purchasing the goods from Ferguson. Likewise, even if, as the Trustee implies that Debtor transferred all of the goods it purchased from Ferguson to affiliates for nothing – such transfers do not retroactively change the value exchange with Ferguson. Instead, it just means that Debtor did not receive reasonably equivalent value in the subsequent transfer. Thus, the Trustee's allegations of who owned the land where the goods came to be used do not give rise to any reasonable inference regarding the value the Debtor received from Ferguson, or the validity of the debt it owed on account of its purchase. The Trustee cannot plead around this reality by simply omitting any allegations acknowledging the chain of ownership.

The Trustee suggests that Ferguson argued in its Motion to Dismiss that Ferguson lacked knowledge of how the goods would be used, which the Trustee purports to counter by suggesting the job site was listed on the invoices and that Ferguson should have known since the Trustee says Ferguson would be entitled to a mechanic's lien. (*See* Resp. at 8 (citing Mot. ¶ 29).) First,

8

this is a strawman argument – Ferguson never argued that its knowledge of how the goods would or would not be used was relevant to determining the value Ferguson received in exchange for paying the purchase price. Instead, Ferguson argued, as above, that merely alleging that a third-party owned the property where the goods were ultimately used says nothing about the values exchanged in the original sale. (*See* Mot. at 29-32.) Moreover, for that reason, whether or not the invoices listed the job site where the goods would be used or where the Debtor directed Ferguson to ship the goods is irrelevant to determining whether the transaction involved an exchange of reasonably equivalent values.[2] Similarly, the Trustee's response that Ferguson should have known where the goods were being used because it would have an interest in asserting a mechanic's lien has no bearing on whether the Debtor received reasonably equivalent value in purchasing goods from Ferguson. Whether Ferguson did or did not have the right to also pursue another party or co-debtor has no bearing on the validity of Debtor's liability to Ferguson or the value it received by satisfying that debt.

Consequently, the Trustee has failed to allege any plausible basis for finding that the Debtor received less than reasonably equivalent value. To the contrary, as the Trustee admits, the Debtor itself incurred the obligations to Ferguson in purchasing goods and satisfied that antecedent debt by paying the purchase price through the transfers at issue here. As such, the Trustee's own allegations establish the Debtor received reasonably equivalent value and thus cannot state a constructive fraud claim. The Court should dismiss Count 1 with prejudice.

---

[2] The Trustee admits as much in conceding that it is not pursuing transactions involving American Residential though the Debtor presumably listed a job site or directed delivery of goods it purchased from Ferguson to property owned by American Residential.

9

## II. The Trustee Also Fails to Plausibly Allege Any Actual Fraud and the Court Should Dismiss Count 2 with Prejudice.

In Count 2, the Debtor seeks to avoid the Debtor's payment of the purchase price for goods that it bought from Ferguson from November 2012 through February 2017 as made with actual intent to hinder, delay, or defraud American Residential. (*See* Am. Compl. ¶¶ 96 & 101.) As described below, however, the Trustee fails to allege any plausible basis (much less with the requisite particularity required by Rule 9(b)) for deeming the Debtor's routine purchase of goods from Ferguson during this period as having been made with actual intent to defraud. The Trustee responds that he alleges multiple "badges of fraud" sufficient for the Court to infer actual fraudulent intent (Resp. at 5-7), but a closer examination of such supposed-badges makes clear any inference of actual fraud is unwarranted and implausible.

Initially, the Trustee alleges the Debtor admitted its fraudulent intent in a single statement by the Debtor's Vice President of Sales, Eric Workman, during heated negotiations with American Residential. (Am. Compl. ¶¶ 29-31.) Tellingly, while Workman purportedly made such threat in June 2014, the Trustee here seeks to avoid transfers dating back to January of 2013 for invoices from November 2012. (*See id.* Exs. A & B). Indeed, more than 50 of the 111 pages that the Trustee attaches listing invoices for supposed fraudulent transfers were dated before June 2014. (*See id* at Ex. B.) The Trustee claims that such purchases dissipated the Debtor's assets where the goods purchased were used to improve real estate owned by non-debtors. Yet, as the history of Debtor's dealing with Ferguson reflected in Exhibit B of the Amended Complaint reflects, the Debtor had been purchasing goods from Ferguson that were purportedly used on property owned by non-debtors long before Workman's alleged threat. The Trustee points to no change in the Debtor's practices that coincided with Workman's purported threat giving rise to any plausible inference the Debtor had fulfilled any threat to dissipate assets.

10

Further, according to the Trustee, the Debtor and American Residential – the creditor the Trustee says Debtor schemed to defraud – only just entered into their agreement in December 2012 and expanded it more than 20 times in the ensuing 13 months. (Am. Compl. ¶¶ 17, 19.) In describing the agreement, the Trustee explains that Debtor leased certain residential properties owned by American Residential for the purposes of subleasing them to residential tenants and managing the properties. (*Id.* ¶ 20.) The Trustee alleges that Debtor was to pay American Residential based on a percentage of the gross rents collected, presumably keeping the rest to cover costs and profit. (*Id.* ¶ 21.) Thus, as the Trustee tells it, the Debtor entered into business with American Residential as a money-making venture. It defies plausibility to infer that the Debtor had any reason to seek to defraud American Residential by dissipating its assets while it continued to expand their agreement. Indeed, it is unclear whether American Residential was even a creditor during this time. (*Id.* ¶ 34 (alleging Debtor only stopped making its base quarterly payment in September 2014).)

The Trustee attempts to add plausibility to his claims by alleging as an additional badge of fraud that Debtor concealed the obligations and payments at issue by failing to make required disclosures to American Residential in June 2014. (Resp. at 5 (citing Am. Compl. ¶¶ 55, 100).) Of course, if true, the timing of such concealment would correspond to when Workman made his purported threat and perhaps lend a veneer of credence to the Trustee's claims that the Debtor followed through on Workman's purported threats. In actuality though, the Trustee only alleges that the Debtor was required to report its *gross* rental income. (Am. Compl. ¶ 21-25.) Nothing in the Amended Complaint alleges that the Debtor was ever obligated to disclose its purchases from Ferguson or that the Debtor otherwise concealed such purchases. Thus, the Trustee not only fails to establish concealment as a badge of fraud, but his repeated reliance on such non-

11

existent concealment to cast Debtor's routine purchasing practices in a more sinister light only highlights the Trustee's inability to plausibly allege actual fraud.

Further, the Trustee argues that as an additional badge of fraud he alleges that "some or all of the obligations were incurred on behalf of insiders." (Resp. at 5.) As an initial matter, although not an exhaustive list of badges of fraud, that "some obligations were incurred on behalf of insiders" is not one of the enumerated badges listed in the Illinois Uniform Fraudulent Transfer Act. *See* 740 ILCS 160/5(b)(1)-(12). Rather, the Illinois UFTA specifies as a badge of fraud that "the transfer or obligation was to an insider," meaning that the Debtor's property was transferred to an insider so as to put it beyond the reach of the Debtor's own creditors. *See* 704 ILCS 160/5(b)(1). Here, the transfers that the Debtor seeks to avoid are Debtor's payment of the purchase price to Ferguson for goods the Debtor bought. Ferguson, of course, is not an insider and such a payment does not warrant inferring any actually fraudulent scheme.

The Trustee instead relies on *Ritchie Capital Management v. Stoebner*, 779 F.3d 857, 863 (8th Cir. 2015). In *Ritchie*, the court there found a badge of fraud sufficiently shown where an individual behind a Ponzi scheme – Tom Petters – caused the debtor (Polaroid) to grant a lien on its trademark portfolio (apparently its only asset of any value) to stave off the default of a $31 million loan that its parent company owed to the lender that was also personally guaranteed by Petters. *Ritchie*, 779 F.3d at 859-860. Thus, in that case, the Debtor gave its interest in property (its trademarks) to a creditor of both its parent company and Petters (to the extent he guaranteed the loan to the parent). While the transfer that was being avoided was not directly to an insider, it was made to satisfy an insider's obligation. *See id.* at 864. By contrast, here, the Trustee admits as he must that the Debtor purchased the goods from Ferguson both incurring the obligation and paying it itself. (*See* Am. Compl. ¶¶ 80 & 81.) The Trustee even attaches an

12

invoice to his reply that expressly identifies the Debtor as the party to whom the goods were sold. (*See* Resp. Ex. A.) A debtor paying its own invoice for goods that it purchased is simply not a badge of fraud allowing the court to infer actual fraudulent intent.

The Trustee also argues that "the obligations and payments were made during a time when the Debtor had incurred a substantial debt and was being threatened with suit or being sued by American Residential." (Resp. at 6.) The Trustee points to the Debtor having contracted with American Residential in December 2012 as the incurrence of a substantial debt that warrants inferring transfers made during that time were actually fraudulent. (*Id.*) Yet, according to the Trustee, the Debtor and American Residential had just entered into their agreement and was expanding it over the first 13 months through at least January 2014. (Am. Compl. ¶¶ 17, 19.) It defies plausibility to infer that a contract that the parties entered into as a money-making venture and expanded more than 20 times constituted such a burden to warrant inferring that Debtor's ongoing purchases of goods from Ferguson where made with the actual intent to defraud.

Moreover, the Debtor is seeking to avoid transfers relating to purchases going back to November 2012. However, the Trustee alleges the Debtor first claimed it was incapable of meeting its obligations and sought relief from American Residential in the summer 2014 – a year and a half later. (*Id.* ¶ 26; *see also id.* ¶ 34 (alleging Debtor stopped making full rental payment in September 2014); ¶ 35 (alleging Debtor stopped paying real estate taxes in 2014).) For its part, American Residential first sent a notice of default on December 2, 2014, and did not sue until March 2016. (*Id.* ¶¶ 36-37.) So again, given that Debtor's purchasing practices had substantially predated those events, they cannot serve as a basis for inferring fraudulent intent.

The Trustee also contends that the Debtor received less than reasonably equivalent value from the transfers because the goods the Debtor purchased from Ferguson were used to improve

real property owned by non-debtors. (Resp. at 6.) As discussed in greater detail above in connection with the Trustee's constructive fraud claim, in making such assertion, the Trustee conflates the ultimate use the Debtor put the goods to and the value that it received from Ferguson. As Ferguson sold the goods to Debtor and Debtor paid the corresponding indebtedness it incurred as a result, the Debtor received reasonably equivalent value. While the Trustee relies on *Grede v. UBS Secs, LLC* to argue that a trustee may avoid transfers to a creditor even though for consideration in the face of actual fraudulent intent, *Grede* made clear that where, as here, the trustee attempts to infer such intent from badges of fraud "the transferee's legal right to receive the transfer is strong evidence that the transfer was not made with the intent to defraud." 303 F. Supp. 3d 638, 660 (N.D. Ill. 2018).

While the Trustee is entitled to *reasonable* inferences, none of the Trustee's alleged badges of fraud plausibly warrant inferring that the Debtor's purchases from Ferguson were intended to defraud American Residential. Quite the contrary, the Trustee's allegations demonstrate that rather than engaging in any intentional scheme to defraud creditors, the Debtor simply continued its ordinary and usual course of business serving as a general contractor on projects owned by third-parties, subsidiaries and affiliates alike buying plumbing and other supplies at market prices. As such, the Court should dismiss Count 2 for Actual Fraud with prejudice.

**III.  The Trustee Continues to Improperly Predicate Its Preference Claim on Contradictory Factual Allegations.**

In his Response, the Trustee proposes to cure his insufficient preference claim by amending his complaint to add a new exhibit specifying the antecedent debts the Trustee contends the Debtor paid Ferguson preferentially. However, the Trustee's allegations in Count 3 that the Debtor was obligated to Ferguson on account of its own antecedent debt (a necessary

14

element of a preference claim) continue to directly contradict the Trustee's allegations in Counts 1 that Debtor was not indebted to Ferguson. The Trustee is free to pursue alternative legal theories, but not alternative facts and thus should not be permitted to pursue both claims.

**WHEREFORE**, the Defendant Ferguson Enterprises, LLC f/k/a Ferguson Enterprises, Inc. d/b/a Ferguson Heating & Cooling respectfully requests the entry of an order, pursuant to FRCP 12(b)(6) as made applicable here by FRBP 7012, dismissing the Complaint in its entirety with prejudice, and granting such other and further relief as this Court deems just.

Dated:  August 13, 2020    Respectfully submitted,

**DEFENDANT FERGUSON ENTERPRISES, LLC F/K/A FERGUSON ENTERPRISES, INC. D/B/A FERGUSON HEATING & COOLING**

By:   Blair R. Zanzig
One of its attorneys

Blair R. Zanzig (No. 6273293)
Reed Heiligman (No. 6294312)
**HILTZ ZANZIG & HEILIGMAN LLC**
53 West Jackson Blvd., Suite 701
Chicago, Illinois 60604
Telephone: 312.566.9008
bzanzig@hzhlaw.com
reed@hzhlaw.com

## CERTIFICATE OF SERVICE

       I, Blair R. Zanzig, an attorney, hereby certify that on the 13th day of August 2020, I caused a true and correct copy of the foregoing **Defendant's Reply in Support of Its Motion to Dismiss** to be served on the following via the indicated means:

### VIA CM/ECF:

Jeffrey K. Paulsen, jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com; jpaulsen@ecf.inforuptcy.com

                               /s/ Blair R. Zanzig